UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| | |
|---|---|
| JUDITH MALLORY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:13-CV-379 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| AMERICAN MANAGEMENT ) | |
| ASSOCIATION INTERNATIONAL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

# **M E M O R A N D U M**

Before the Court is Defendants American Management Association International's and Management Centre Europe's ("Defendants") motion to enforce a forum selection clause by dismissing Plaintiff Judith Mallory's ("Plaintiff") lawsuit (Court File No. 4). Plaintiff filed a response (Court File No. 11) and Defendants filed a reply (Court File No. 12). For the following reasons, the Court will **GRANT** Defendants' motion and **DISMISS WITHOUT PREJUDICE** the case (Court File No. 4).

## **I.     FACTUAL AND PROCEDURAL BACKGROUND**

In 2002 Plaintiff entered into an independent contractor agreement with Management Centre Europe ("MCE"), a Brussels-based subsidiary of New York-based American Management Association International ("AMA"). Under the agreement Plaintiff served as a faculty member providing corporate training to employees of an MCE client operating in North and South America. She signed a similar agreement in 2006 to continue working on the project. The present action arises from the 2006 agreement.

According to Plaintiff, Kurt Weiss ("Weiss"), the MCE contractor who had originally approached her to work on the project, told her before she signed the 2006 contract that it was

"nonnegotiable" and was presented on a "take it or leave it basis" (Court File No. 11-1, Mallory Aff. ¶ 14). Plaintiff testifies no one at AMA or MCE attempted to explain the contract's terms to her (*id.*). She further testifies that Weiss, acting as an agent of AMA and MCE, told her that if she wanted to continue working on the project, she could not negotiate any of the contract's terms with AMA or MCE (*id.* ¶ 15). Additionally, she reports that upon telling Weiss she wanted her family attorney to review the contract, he was adamant that she could not and directed her to "'just sign it immediately and return it'" (*id.* ¶ 16). Plaintiff also states Weiss told her that if she did not sign the contract as-is she would not receive another contract to work on any project (*id.*).

The agreement provided that:

> This Agreement is governed and construed in accordance with Belgian law. The Brussels judicial courts shall be the only courts with jurisdiction to know about any conflicts arising in connection with the present agreement.

(Court File No. 5-1, p. 8). Though somewhat awkwardly worded, the parties agree this provision constitutes a mandatory forum selection clause designating Brussels as the forum for all litigation arising from the contract. Plaintiff testifies she signed the contract to retain her position "despite terms which had not been explained to me or discussed with me or which I did not fully understand or appreciate, e.g., application of Belgian law to the agreement and jurisdiction of 'Brussels judicial courts' to 'know about any conflicts in connection with' the agreement" (*id.* ¶ 17). Plaintiff notes at the time she signed the contract she had a son in her care and was the primary breadwinner, as her husband was ill and had retired (*id.* ¶ 20). She also states she has never traveled to Brussels, speaks neither French nor Dutch, and did know the ramifications of litigating in a Belgian court (*id.*).

Plaintiff testifies that despite being an all-around exemplary worker and exceeding expectations, MCE terminated her contract in March 2007. Plaintiff claims she was not paid for the

2

remainder of 2007 in violation of the contract and was not paid for some work she had already performed. In 2013, Plaintiff filed the instant breach-of-contract action in Knox County Chancery Court. Defendants removed the case pursuant to this Court's diversity jurisdiction and subsequently moved to dismiss on the basis of the forum selection clause.

## II.   STANDARD OF REVIEW AND LEGAL BACKGROUND

As a preliminary matter, the Court notes that "in a diversity suit, the enforceability of the forum selection clause is governed by federal law." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Defendants filed the instant motion to dismiss under Federal Rule of Procedure 12(b)(3). Plaintiff, however, asserts that Rule 12(b)(6), not Rule 12(b)(3), is the proper procedural mechanism for enforcement of a forum selection clause. At the time the parties briefed the issue there was a split of authority among the United States Circuit Courts of Appeal, and even disagreement within the Sixth Circuit, regarding the appropriate procedure for enforcing a forum selection clause.

Fortunately, the United States Supreme Court has since helped clarify the issue in *Atlantic Marine Construction Co., Inc. v. U.S. District Court for the Western District of Texas*, 134 S. Ct. 568, 575 (2013) ("*Atlantic Marine*"). The Court held Rule 12(b)(3) did not provide a basis for enforcement of a forum selection clause; however, the Court did not say whether Rule 12(b)(6) could.[1] Instead, the Court held that 28 U.S.C. § 1404(a)[2] "provides a mechanism for enforcement

---

[1] Although the possibility of using Rule 12(b)(6) to enforce a forum selection clause was not before the Court, it noted that "[e]ven if a defendant could use Rule 12(b)(6) to enforce a forum-selection clause, that would not change our conclusions that § 1406(a) and Rule 12(b)(3) are not proper mechanisms to enforce a forum-selection clause and that § 1404(a) and the *forum non conveniens* doctrine provide appropriate enforcement mechanisms." *Atlantic Marine,* 134 S. Ct. at

3

of forum-selection clauses that point to a particular federal district" and that "the appropriate way to enforce a forum-selection clause pointing to a state *or foreign forum* is through the doctrine of *forum non conveniens*." *Id*. at 579-80 (first emphasis added).[3]

The Supreme Court explained that "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Id.* at 580 (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). Consequently, "because both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a *nonfederal forum* in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Id*. at 580 (emphasis added).

Regarding substantive analysis, *Atlantic Marine* underscores that "[o]nly under extraordinary circumstances unrelated to the convenience of the parties" should a court decline to enforce a forum

---

580.

[2] "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

[3] The Court reasoned that "Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper'" and "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Atlantic Marine*, 134 S. Ct. at 577. Venue for cases removed from state court is controlled by 28 U.S.C. § 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." This means that venue cannot be "wrong" or "improper" for a case removed in technical accordance with § 1441(a), as the present case was. As the *Atlantic Marine* court noted, "[i]f venue is proper under federal venue rules, it does not matter for the purpose of Rule 12(b)(3) whether the forum-selection clause points to a federal or a nonfederal forum." *Id*. at 580.

selection clause. *Id*. at 581. When considering motions under § 1404(a) or *forum non conveniens*, "[o]rdinarily the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id*.[4] "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id*. (internal quotation marks omitted). In such a circumstance, the "valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id*. (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).

In addition to the general approach outlined above, *Atlantic Marine* explains several specific ways in which a forum selection clause changes the normal § 1404 or *forum non conveniens* analysis.[5] First, "the plaintiff's choice of forum merits no weight," as the plaintiff "must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id*. at 581-82. Second, a court "should not consider arguments about the parties' private interests," as parties to a valid forum selection clause "waive the right to challenge the preselected

---

[4] The Court noted that factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Atlantic Marine,* 134 S. Ct. at 581, n. 6 (quoting *Piper Aircraft Co.*, 454 U.S. at 241, n. 6). Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.*

[5] The Court discusses the differences in the context of a motion under § 1404 but notes that "the same standards should apply to motions to dismiss for *forum non conveniens* in cases involving valid forum-selection clauses pointing to state or foreign forums." *Atlantic Marine*, 134 S. Ct. at 583, n. 8.

5

forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id*. at 582. A court therefore "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* Consequently, "a district court may consider arguments about public-interest factors only," and such factors will defeat enforcement only in "unusual cases." *Id*. Third, the new venue "will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* The Court explains why forum selection clauses deserve so much deference:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

*Id*. at 583.

### III. DISCUSSION

Given the clarification provided by *Marine Atlantic*, the Court will construe Defendants' motion to dismiss as proceeding under *forum non conveniens*. 134 S. Ct. at 580 ("[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."). This should not come as a surprise to the parties, as they analyzed enforcement of the forum selection clause under *forum non conveniens* as well as other standards. Furthermore, the Sixth Circuit in *Wong* upheld a district court's *sua sponte* decision to proceed under *forum non conveniens* despite the plaintiffs' "claim that the district court was not properly briefed on the relevant *forum non conveniens* factors because the court was evaluating a motion to

6

dismiss for improper venue under FRCP 12(b)(3), rather than a motion to dismiss for *forum non conveniens*." 589 F.3d at 830. The court noted the doctrine falls within a district court's "inherent authority" and a court "does not abuse its discretion simply by *sua sponte* raising *forum non conveniens*." *Id*. (citing *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 364 (6th Cir. 2008)). A court must, however, have before it facts relevant to the issue of *forum non conveniens. Id.* Here*,* the Court has adequate information in the form of the parties' agreement, Plaintiff's affidavit, and Plaintiff's attorney's declaration (Court File No. 11).[6]

The Court's analysis begins with whether the contract contained a valid forum selection that is not unreasonable or unfair. The parties agree the contract in question contained a mandatory forum selection clause designating Brussels as the forum. It is firmly established that a mandatory "forum selection clause should be upheld absent a strong showing that it should be set aside." *Wong*, 589 F.3d at 828 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)); *see also Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (Forum selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"). The party opposing the forum selection clause bears the burden of showing it should not be enforced. *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995). Such a clause should be set aside at the outset if the opponent shows it is unfair or unreasonable. *Sec. Watch, Inc. v. Sentinel Sys., Inc*., 176 F.3d 369, 374 (6th Cir. 1999). To

---

[6] The Court may consider materials outside the complaint in a *forum non conveniens* analysis. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 259 (1981); *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014) ("In deciding a motion to dismiss for *forum non conveniens*, a district court normally relies solely on the pleadings and affidavits, though it may order discovery.") (internal citation omitted).

7

determine whether a forum selection clause is unreasonable or unfair, a court examines the following factors:

> (1) whether the clause was obtained by fraud, duress, or other unconscionable means;
> (2) whether the designated forum would ineffectively or unfairly handle the suit; and
> (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust.

*Wong*, 589 F.3d at 828 (citing *Sec. Watch, Inc.*, 176 F.3d at 375).

### A. Fraud, Duress, or Other Unconscionable Means

The Court first examines whether "the clause was obtained by fraud, duress, or other unconscionable means." *Id.* This includes whether the clause was obtained by overreaching or was the result of an unconscionable bargain. *Unique Shopping Network, LLC v. United Bank Card, Inc.*, No. 3:10-CV-428, 2011 WL 2181959, at *7 (E.D. Tenn. June 3, 2011); *see also Buckeye Check Cashing of Arizona, Inc. v. Lang*, No. 2:06-CV-792, 2007 WL 641824, *5 (S.D. Ohio Feb. 23, 2007) (defining overreaching "as the 'act or an instance of taking unfair commercial advantage of another'") (citations omitted). The fact that "Plaintiff is an individual and [Defendant] is a company with greater economic power does not, by itself, provide a basis for finding abuse." *Jenkins v. Marvel*, 683 F. Supp. 2d 626, 634 (E.D. Tenn. 2010). Also, general claims of fraud will not invalidate a forum selection clause; rather, the challenging party must allege "fraud in the inclusion of the clause itself." *Id*.

Plaintiff contends MCE overreached, given that it had much greater bargaining power, she needed to retain the job because of personal financial difficulty, the parties did not engage in any real negotiations, and she was pressured by Weiss to sign the contract without questioning it. Plaintiff also avers she did not fully understand the terms of the contract, particularly the forum selection clause and what litigating in Brussels would entail. Plaintiff acknowledges that "unequal

bargaining power of the parties or lack of ability to negotiate over the clause cannot, in itself, support a finding of overreaching" but points out that "overreaching may be found if the disparity in bargaining power was used to take unfair advantage of the employee" (Court File No. 11).

The Court cannot, however, conclude Defendants used unequal bargaining power to unfairly take advantage of Plaintiff. First, even if Weiss said everything Plaintiff alleged he did, Plaintiff presents no evidence that he was acting as an agent of, or otherwise at the behest of, MCE or AMA. Like Plaintiff, Weiss was an independent contractor for MCE. Nor has Plaintiff alleged MCE or AMA managers knew Weiss engaged in the alleged pressure tactics.

Plaintiff testifies in her affidavit that an unnamed MCE employee told her that the independent contractor agreement in question was nonnegotiable and was offered on a take-it-or-leave-it basis. This is not uncommon in labor contracts, however, and Plaintiff had the opportunity to either accept or reject the agreement. In upholding a forum selection clause, the Sixth Circuit noted that even though the clause was nonnegotiable, the plaintiff "could have, however, walked away from the contract, being under no compulsion" to enter into it. *Interamerican Trade Corp. v. Companhia Fabricadora De Pecas*, 973 F.2d 487, 489 (6th Cir. 1992). Similarly, in a case dealing with an arbitration clause in an employment contract, the Sixth Circuit noted that "[a] contract is not adhesive merely because it is a standardized form offered on a take-it-or-leave-it basis." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 500 (6th Cir. 2004). To show it was adhesive, "there must be evidence that [Plaintiff] would be unable to find suitable employment if she refused to sign [MCE's] agreement." *Id.* at 502. Plaintiff has provided no such evidence here.

An instance of overreaching was described by the Ninth Circuit in *Petersen v. Boeing Co.*, 715 F.3d 276, 282-83 (9th Cir. 2013). The plaintiff was an American flight instructor hired by

9

Boeing to provide instruction in Saudi Arabia. The initial employment contract he signed in the United States contained no reference to a Saudi forum selection clause, but upon arriving in Saudi Arabia he was required to sign a new employment contract containing such a clause. *Id*. Without permitting him time to read the new agreement, his supervisor told him that if he did not sign it he would be forced to return immediately to the United States at his own expense. *Id*. The instant case, while perhaps not presenting the ideal circumstances for a worker in a difficult economy, did not involve the kind of coercion shown in *Petersen* that might lead the Court to conclude overreaching occurred. Here, Plaintiff simply alleges she was in a difficult economic position and MCE offered the contract on a take-it-or-leave-it basis.

Further, despite Plaintiff's assertion that she did not understand the forum selection clause, it is well established that

> [o]ne who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation, or other wrongful act by another contracting party. Thus, ignorance of the contents of a contract expressed in a written instrument does not ordinarily affect the liability of one who signs it or who accepts it otherwise than by signing it.

*Glenn Hunter & Associates, Inc. v. Union Pac. R. Co.*, 135 F. App'x 849, 855 (6th Cir. 2005) (citing 17A Am.Jur.2d Contracts § 224 (1991)). Given that, as explained above, Plaintiff has not demonstrated Defendants committed a wrongful act in relation to her entering the contract, she is presumed to know and assent to its contents.

Finally, there does not appear to be anything inherently unconscionable about the forum selection clause itself. It is not surprising that an international firm hiring contractors from various jurisdictions to work at sites scattered across the globe would want to secure one place as the forum for all claims rather than expose itself to litigation in a variety of foreign fora. The Court is not

holding that a forum selection clause in an employment contract may never be found unconscionable. Here, however, Plaintiff is a Tennessee resident who signed a contract with a Brussels-based entity to conduct management training courses in foreign countries. This is not a case where "the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 503 (6th Cir. 2004) (quoting *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 170-71 (Tenn. Ct. App. 2001). Even when a take-it-or-leave-it contract can be considered one of adhesion, it is only substantively unconscionable "when its terms are beyond the reasonable expectations of an ordinary person[] or oppressive." *Id.* at 504 (citing *Buraczynski v. Eyring*, 919 S.W.2d 314, 319 (Tenn. 1996)); *see also Unique Shopping Network, LLC,* 2011 WL 2181959, at *5. Here, a reasonable person would expect that signing a contract with a foreign company to work abroad might entail filing suit in an overseas forum.

### B. Effective and Fair Handling

Plaintiff seeks to show Brussels would ineffectively or unfairly handle her suit because of the numerous procedural differences between a United States district court and a court in Brussels. Plaintiff's attorney's declaration states his research shows that under Belgium law there are no jury trials for contract disputes; litigation is conducted in Dutch or French; depositions and interrogatories are not used; there is no American-style discovery (parties ordinarily produce only documents necessary to sustain their own allegations); calling witnesses is rare; lawyers do not use contingency fee arrangements for contract disputes; and the statute of limitations period is not tolled by the filing of the instant action (Court File No. 11-2).

Although the Court recognizes such differences may exist, "different or less favorable foreign law or procedure alone does not satisfy this prong." *Wong*, 589 F.3d at 829 (citing *Shell*, 55 F.3d at 1230). Courts have routinely enforced forum selection clauses even though parties opposing them would be deprived of jury trials and other features of American courts. *See*, *e.g.*, *Interamerican Trade Corp.*, 973 F.2d at 489 (enforcing clause designating Brazil as forum even though "a jury trial is not available[,] the judicial process is slow[, and] trial by depositions is not permitted"); *Wong*, 589 F.3d at 829 (noting numerous United States Circuit Courts of Appeal "have held that lack of jury trials does not render a forum inadequate"). Similarly, *Wong* noted that "[t]he fact that parties will have to structure their case differently than if they were litigating in federal court is not a sufficient reason to defeat a forum selection clause." *Id.* at 829 (quoting *Shell*, 55 F.3d at 1230) (enforcing a forum selection clause designating a jurisdiction that would not allow plaintiffs to proceed as a class).

To find that the designated forum would be ineffective or unfair, "the foreign law must be such that a risk exists that the litigants will be denied any remedy or will be treated unfairly." *Id*. Although there are certainly important differences between American and Belgian courts, Plaintiff has not presented evidence to show she would have no remedy in Brussels or be treated unfairly. Accordingly, the Court cannot conclude the designated forum would be ineffective or unfair.

**C. Inconvenience**

Under this prong, the party opposing enforcement of the forum selection clause "must show that enforcement of the clause would be so inconvenient such that its enforcement would be unjust or unreasonable." *Wong*, 589 F.3d at 829 (citing *Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 722-23 (6th Cir. 2006)). This requires Plaintiff to show litigating in Brussels would

12

"be so gravely difficult and inconvenient that [she] will for all practical purposes be deprived of [her] day in court." *Long v. Dart Int'l, Inc.*, 173 F. Supp. 2d 774, 778 (W.D. Tenn. 2001) (quoting *Bremen*, 407 U.S. at 10).

The inconvenience prong is in some tension with *Atlantic Marine'*s pronouncement that a court "should not consider arguments about the parties' private interests," as parties to a valid forum selection clause "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." 134 S. Ct. at 582. However, the Court sees a distinction between (a) inconvenience that might ordinarily tip the balance of equities when there is no forum selection clause and (b) inconvenience so burdensome so as to essentially deprive a party of its day in court. The Second Circuit appears to support such a reading in *Martinez v. Bloomberg LP*, where it expressed reservations regarding whether *Atlantic Marine*'s prohibition against taking private interests into account should be taken as an absolute, particularly when applied to cases pointing to an overseas forum. The court noted that "*Atlantic Marine* involved a motion under 28 U.S.C. § 1404(a) to transfer a case from one federal district court to another based on a forum selection clause. *Forum selection clauses pointing to foreign fora present distinct challenges not raised by clauses that merely point to other federal district courts*." 740 F.3d 211, 229 (2d Cir. 2014) (emphasis added).

While the Court is mindful not to consider mere inconveniences, as *Atlantic Marine* instructs, it still must address the larger question of whether Plaintiff has shown that enforcement of the forum selection clause would be so unjust or unreasonable as to effectively deprive Plaintiff of her day in court. That is a very high bar. In *Wong*, for instance, the Sixth Circuit enforced a Gibraltar forum selection clause for individual plaintiffs suing an online gambling site they frequented. As the court observed:

13

> the plaintiffs are not sophisticated business entities with the ability to negotiate the forum, and continuing the suit in Gibraltar would no doubt be an inconvenience. Yet even with these considerations, plaintiffs have not carried their 'heavy burden' of showing that enforcing this forum selection clause would be unjust or unreasonable. Aside from their claims that a Gibraltar forum forecloses the possibility of a jury trial or class-action suit, plaintiffs have failed to show how litigating in Gibraltar would be such an inconvenient forum to yield it unjust or unreasonable.

589 F.3d 821 at 829-30. Similar to the plaintiffs in *Wong*, Plaintiff here asserts that the procedural differences in the foreign legal system, the increased expense of litigating overseas, and her lack of sophistication and resources make litigating in the foreign forum so burdensome that it essentially forecloses the possibility of pursuing her claim there. As in *Wong*, Plaintiff faces significant, but not unsurmountable, obstacles to pursuing her claim in the designated forum.

The Court notes that "[m]ere inconvenience or additional expense is not . . . the test for unreasonableness." *Jenkins*, 683 F. Supp. 2d at 635 (quoting *Long*, 173 F. Supp. 2d at 778). Plaintiff also expresses concern about lack of compulsory process over potential witnesses residing in Tennessee. This argument is weakened, however, by *Atlantic Marine's* conclusion the district court erred in giving weight to the plaintiff's concern that compulsory process would not be available for the majority of the plaintiff's witnesses and would cause significant expense for willing witnesses. As the Supreme Court noted, the plaintiff "knew that a distant forum might hinder its ability to call certain witnesses and might impose other burdens on its litigation efforts." *Atlantic Marine*, 134 S. Ct. at 583-84. In sum, although litigating in Brussels would undoubtably be more onerous for Plaintiff than litigating in the Eastern District of Tennessee, the Court cannot conclude that it would "be so gravely difficult and inconvenient that [Plaintiff] will for all practical purposes be deprived of [her] day in court." *Long*, 173 F. Supp. 2d at 778 (quoting *Bremen*, 407 U.S. at 10).

**D. Public Interests**

Under *forum non conveniens* the Court must also look to public-interest factors, including "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine,* 134 S. Ct. at 581, n. 6 (quoting *Piper Aircraft Co.*, 454 U.S. at 241, n. 6). Plaintiff does not address the public-interest factors, instead dwelling on Plaintiff's private interests (the relevance of which are limited by *Atlantic Marine*, as the Court explained above). There does not appear to be a public-interest argument for keeping this case in the Eastern District of Tennessee. There has been no indication court congestion is an issue, the local interest in this controversy is not pronounced given Plaintiff was working abroad for a foreign company, and a Brussels court would certainly be most "at home" with the Belgium laws to be applied in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion and will **DISMISS WITHOUT PREJUDICE** this case (Court File No. 4). There being no other issues in this case, the Court will **DIRECT** the Clerk of Court to **CLOSE** the case

**An order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**